**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 6:03-50** |
| | § | |
| **ANITRA JENKINS,** | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court are Defendant Anitra Jenkins' Petition for Compassionate Release Pursuant to 3582(c)(2) Amended Guideline and 3582(c)(1)(A)(i) of First Step Act (D.E. 92) and Motion for Compassionate Release and Sentence Reduction in Accordance to 3582(c)(1)(A)(i) and (c)(2) (D.E. 96), to which the Government has responded (D.E. 105).

**I. BACKGROUND**

In 2003, a federal indictment charged that: (Count 1) Defendant by force, violence, and intimidation did take from the person and presence of another, approximately $14,000 in the possession of Cuero State Bank, and in committing such offense, did assault and put in jeopardy the life of another person by the use of a firearm; and (Count 2) she knowingly possessed and brandished a firearm in furtherance of a crime of violence (bank robbery). Defendant pled guilty to both counts and was sentenced as a career offender to 262 months' imprisonment. She has served roughly 213 months (81%) of her sentence and has a projected release date, after good time credit, of March 4, 2023.

Defendant previously moved the Court for a sentence reduction because she feared contracting COVID-19 in prison and wanted to take care of her elderly mother, but her motion was denied. *See* D.E. 87, 89, She now moves the Court to reduce her sentence to 244 months,

which she claims would allow her to be released to home confinement or a halfway house, because her underlying medical conditions make her particularly vulnerable to severe illness or death should she contract COVID-19 in prison. She also claims that her offense level has been subsequently lowered by the Sentencing Commission. Defendant states that she submitted a total of five administrative requests for a sentence reduction. On May 14, 2020, the warden at FCI Dublin denied one such request for a sentence reduction "based on concerns about COVID-19." D.E. 92, p. 12.

The Government argues that Defendant's risk of danger to the community, her unknown vaccination status, and the Bureau of Prisons' strenuous efforts to protect inmates against the spread of COVID-19 counsel strongly against a sentence reduction.

## II. LEGAL STANDARD

The statute, 18 U.S.C. § 3582(c)(1)(A), authorizes a court to reduce a defendant's sentence under limited circumstances:

> **(c) Modification of an Imposed Term of Imprisonment.—**The court may not modify a term of imprisonment once it has been imposed except that—
>> (1) in any case—
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>>> (i) *extraordinary and compelling reasons warrant such a reduction . . . and* that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

"Neither the [U.S. Sentencing Commission's compassionate-release] policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582." *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). Although "not dispositive," the commentary to U.S.S.G. § 1B1.13 nonetheless "informs [the Court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (citing *United States v. Rivas*, — Fed. App'x —, 2020 WL 6437288, at *2 (5th Cir. Nov. 2, 2020)).

**(A) Medical Condition of the Defendant.—**

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant. –**

The defendant is (i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less;

**(C) Family Circumstances. –**

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons. –**
    As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13(1)(A), Application Note 1.

Even if "extraordinary and compelling reasons" for early release exist, the Guidelines' policy statements provide for a reduction in sentence only if a defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. §3142(g)." U.S.S.G. § 1B1.13(2). Factors relevant to this inquiry include: (1) the nature and circumstances of the offenses of conviction, including whether the offense is a crime of violence, or involves a minor victim, a controlled substance, or a firearm, explosive, or destructive device; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

The Court must also consider whether a reduction is consistent with the applicable section 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. The applicable statutory factors include, among others: the defendant's history and characteristics; the nature and circumstances of the offense; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; the need to deter criminal conduct and protect the public from further crimes of the defendant; the need to provide the defendant with, among other things, any needed medical treatment; and the various kinds of sentences available. *See* 18 U.S.C. §§ 3553(a)(1)-(7).

With respect to motions for compassionate release based on COVID-19:

A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant. Hence, a prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting

generalized statements on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak. . . . [T]he rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person.

*United States v. Koons*, 2020 WL 1940570, at *4 & n.8 (W.D. La. Apr. 21, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

To be sure, courts around the country, in some exceptional cases, have granted compassionate release where the defendant has demonstrated an increased risk of serious illness if he or she were to contract COVID. . . . But that is certainly not a unanimous approach to every high-risk inmate with preexisting conditions seeking compassionate release.

The courts that granted compassionate release on those bases largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns. . . . Fear of COVID doesn't automatically entitle a prisoner to release.

*Thompson*, 984 F.3d at 434–35 (collecting cases) (footnotes and citations omitted).

"In general, the defendant has the burden to show circumstances meeting the test for compassionate release." *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019).

**III. ANALYSIS**

Defendant is 42 years old. She has offered evidence that she is obese and suffers from hypertension and hypothyroidism. According to the Centers for Disease Control and Prevention, "obesity (BMI ≥30 $kg/m^2$ but < 40 $kg/m^2$)" and "possibly hypertension can make you more likely to get severely ill from COVID-19." *People with Certain Medical Conditions*, CDC (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

The *Thompson* Court recently found that hypertension did not make an inmate's case extraordinary, despite causing an increased risk for COVID-19 complications, reasoning that "nearly half of the adult population in the United States suffers from hypertension." *Thompson*, 984 F.3d at 434. *See also United States v. Harris*, 989 F.3d 908, 912 (11th Cir. 2021) (affirming district court's conclusion that defendant's hypertension was not extraordinary and compelling, noting that the conditions labeled by the CDC "as only 'might be' ones are listed there because of 'limited data and information' about the condition's impact and whether it increases the risk"); *United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) (affirming district court's denial of compassionate release where prisoner argued that her hypertension increased her risk of death from COVID-19). According to the CDC, the prevalence of obesity is similarly 44.8% among adults 40 to 59 years. *Adult Obesity Facts*, CDC (Feb. 11, 2021), https://www.cdc.gov/obesity/data/adult.html. "Though obesity is an 'underlying medical condition' that poses 'increased risk for severe illness from COVID-19,' courts have found that obesity does not provide adequate grounds for compassionate release." *United States v. Gheith*, 2020 WL 5850162, at *4 (E.D. La. Oct. 1, 2020), appeal dismissed, 2021 WL 1565813 (5th Cir. Feb. 17, 2021), (citing *United States v. Gordon*, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release of an obese defendant, reasoning that because "42.4% of American adults are obese and additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted"); *United States v. Whiteman*, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020) (denying compassionate release of a defendant whose "only active health problems are obesity and high blood pressure"); *United States v. Takewell*, 2020 WL 4043060, at *3 (W.D. La. July 17, 2020) (denying compassionate release upon finding that the defendant's "general complaint obesity and hypertension are not

consistent with extraordinary or compelling circumstances as provided by the policy statement and its commentary")). Like Thompson, Defendant also "can point to no case in which a court, on account of the pandemic, has granted compassionate release to an otherwise healthy defendant with two well-controlled, chronic medical conditions . . . ." *See Thompson*, 984 F.3d at 435.

Moreover, FCI Dublin, where Defendant is incarcerated, currently has only one active COVID-19 case among inmates. *See* https://www.bop.gov/coronavirus/ (last visited May 18, 2021). The BOP is also working with the CDC and the Federal Government's COVID-19 Vaccine/Therapeutics Operation to ensure the COVID-19 vaccine is "available to all staff and inmates who wish to receive it as quickly as possible." *Id.* As of May 18, 2021, 442 out of 850 inmates at FCI Dublin have been fully vaccinated. *Id.* If Defendant has not already been offered a COVID-19 vaccine, she will be soon. On this record, the Court finds that extraordinary and compelling reasons do not exist that would warrant a sentence reduction. *See, e.g.*, *United States v. Davis*, 2021 WL 1382119, at *2 (D.N.J. Apr. 12, 2021) ("As vaccine access expands to inmates at FDC Philadelphia, the risk that Davis will contract a serious case of COVID-19 continues to decrease."); *United States v. Kaneshiro*, 2021 WL 1138058, at *3 (D. Haw. Mar. 24, 2021) ("The possible availability of the vaccine in the near future is therefore not something that [t]his court can ignore in ruling on Kaneshiro's compassionate release request.").

Citing 18 U.S.C. § 3582(c)(2), Defendant further moves for a sentence reduction based on Amendment 791 to the Sentencing Guidelines, which amended the financial loss tables to account for inflation. Under the 2003 version of U.S.S.G. § 2B3.1(b)(7)(B), Defendant received a 1-level enhancement because the loss ($13,995) exceeded $10,000. Presentence Investigation Report (PSR), D.E. 44-1, ¶ 17. Under the current version of the same Guideline, no

enhancement applies if the loss is $20,000 or less. Defendant "is not entitled to retroactive application of Amendment 791 for two reasons. First, [A]mendment 791 is not listed in § 1B1.10(d) of the Guidelines as an amendment that would justify a sentence modification under § 3582(c)(2)." *United States v. Tyler*, 2018 WL 4691586, at *6 (S.D. Tex. July 25, 2018), *report and recommendation adopted*, 2018 WL 4690256 (S.D. Tex. Sept. 28, 2018). Second, Defendant was not sentenced based upon the amount of loss, but rather based upon her status as a career offender pursuant to U.S.S.G. § 4B1.1.

Finally, the Court finds that the § 3553(a) factors, as considered in the specific context of the facts of Defendant's case, do not warrant a reduction in her sentence. In the current offense of conviction, Defendant pointed a firearm at a bank teller during the commission of a bank robbery. She was sentenced as a career offender based on two prior Texas convictions for aggravated assault with a deadly weapon. Giving rise to those state convictions, on May 5, 1999, Defendant followed her ex-girlfriend's boyfriend home from work, waved a handgun at him, and threatened to kill him and her ex-girlfriend. Later that night, she fired gunshots into the radiator of his parked car. Early the next morning, she kidnapped her ex-girlfriend at gunpoint, drove to another city, and fired shots into a gas station where her ex-girlfriend had run for help. She continued to keep her ex-girlfriend and another customer hostage inside the gas station, only releasing them after being surrounded by law enforcement officers. PSR ¶¶ 62–65. Defendant has shown a continued pattern of violent and insubordinate conduct throughout her term of imprisonment for the current offense and has been sanctioned more than three dozen times for disciplinary infractions, including assault (two infractions), fighting with another inmate or person (four infractions); threatening bodily harm (two infractions), and possessing a dangerous

weapon. D.E. 96-2. Her most recent infraction was committed on April 13, 2021. Releasing Defendant early would not deter criminal conduct or protect the public from further crimes.

**IV. CONCLUSION**

Accordingly, Defendant's Petition for Compassionate Release Pursuant to 3582(c)(2) Amended Guideline and 3582(c)(1)(A)(i) of First Step Act (D.E. 92) and Motion for Compassionate Release and Sentence Reduction in Accordance to 3582(c)(1)(A)(i) and (c)(2) (D.E. 96) are **DENIED**.

It is so **ORDERED** this 18th day of May, 2021.

JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE